TED DEYLE, APPELLANT, v. STATE OF NEBRASKA, DEPARTMENT OF ROADS, ET AL., APPELLEES.
229 N. W. 2d 565

Filed May 29, 1975. No. 39779.

Ross, Schroeder & Fritzler and Ted L. Schafer, for appellant.

Paul L. Douglas, Attorney General, Warren D. Lichty, Jr., Gary R. Welch, and John E. Brown, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

The plaintiff is a landowner whose property lies west of and adjacent to State Highway No. 10 which is also Second Avenue in Kearney, Nebraska. In 1974 the State was in the process of constructing a four-lane highway with center medians along and adjacent to the plaintiff's property. The project commenced south of 31st Street and continued beyond 52nd Street. This action was brought to enjoin the Department of Roads of the State of Nebraska and its Director from constructing a median in the highway which would deny north-bound traffic on the highway access to the defendant's property at a driveway located at approximately 45th Street.

An abutting landowner has no vested interest in the flow of traffic past his premises, and a change in the flow of traffic resulting from the placing of medians in the center of Second Avenue was not a compensable taking or damaging of his property. See Painter v. State, 177 Neb. 905, 131 N. W. 2d 587.

The plaintiff's theory of the case was that the denial of a break in the median at 45th Street opposite the driveway to his property was arbitrary, capricious, and

unreasonable, and therefore, illegal. The State relies upon Hammer v. Department of Roads, 175 Neb. 178, 120 N. W. 2d 909, in which this court said that before a landowner can prevent the imposition of controlled access he must establish by clear and unequivocal proof that the denial of access to his property is unreasonable, arbitrary, or discriminatory.

The trial court found the plaintiff had failed to prove the defendants had acted in an arbitrary and capricious manner and dismissed the action. The sole issue on appeal is whether the evidence established the refusal to grant a median break at 45th Street was arbitrary and capricious.

The plaintiff's property is a 7-acre tract located near the north edge of Kearney, Nebraska. It has a frontage of approximately 500 feet on the west side of Second Avenue. The south property line is at 44th Street and the property extends to the north beyond 45th Street. The north 2 acres of the tract are leased to Deyle Construction Company, a corporation owned by the plaintiff. The driveway at 45th Street leads to a building in which the Deyle Construction Company operates a construction business and sells building materials, plumbing supplies, and other items. An interior decorating shop and paint shop is located at the back of the building.

Most of the traffic going to the Deyle Construction Company approaches from the south. A traffic count made by one of the plaintiff's employees during an 8-day period in February 1974, showed 258 vehicles coming from the south and 7 from the north. Because much of the property in the area north of 39th Street is undeveloped some of the streets shown on plats in the area have not been opened and other streets have not been dedicated. If there is no break in the median at 45th Street, traffic going to the Deyle Construction Company will be required to make a U-turn at a median break north of 45th Street or circulate on roads and streets

to the east of Second Avenue and make a left turn onto Second Avenue at a point north of 45th Street.

There is a median break at 44th Street which gives access to a driveway at the south property line of the plaintiff's property. However, there is no frontage road on the west side of Second Avenue and the plaintiff would be required to construct an access road across the south 5 acres of his property if traffic to the Deyle Construction Company were to use the median break at 44th Street for access.

The plaintiff had some difficulty in ascertaining whether the plans for the highway project included a median break at 45th Street. After it was determined that the plans did not include a median break at 45th Street, a request for a change to include such a break was made and there were several hearings or conferences with officials of the Department of Roads and the Highway Commission. Some changes were made in the plans at other locations and three additional median breaks below 44th Street were granted. The request for a median break at 45th Street was refused.

The plaintiff called a consulting engineer, Nathaniel W. Beezley, who had been employed as assistant engineer of design and as urban engineer by the Department of Roads from 1963 to 1968. He testified that the public was not afforded reasonable ingress and egress to the plaintiff's property because existing streets did not provide an adequate circulation system. Traffic approaching from the south was required to travel an unusually long distance to reach the plaintiff's property and industrial traffic was routed into residential areas. The witness proposed a median break at 45th Street opposite the driveway to the plaintiff's property as a solution to this difficulty.

The defendant's evidence showed the project was planned in cooperation with local authorities and information was obtained from city officials concerning future street development in the area. Specifically, the

State was advised there was a proposal to develop 42nd Street and 44th Street.

The final plans engineer for the Department of Roads testified concerning the purpose of highway medians and their function in highway design. He explained that controlled access on this project commenced at 44th Street. North of 44th Street median breaks were placed at approximately 2-block intervals. This was primarily a matter of safety. The longer medians provided adequate storage space for turn lanes and permitted higher speeds as traffic moved out of the congested area. He further testified that a median break at 45th Street would serve only one property owner at this time, and would interfere with the turn lane for south-bound traffic at 44th Street.

The evidence as a whole established the decision by the Department of Roads as to where median breaks would be placed was a matter of judgment and depended upon the consideration of a number of factors. As stated by the plaintiff's witness, Beezley, there is a conflict between the land service function and the through traffic function in highway design; and adjustments and accommodations must be made based upon the relative importance of each function at particular points. There is no scientific or mathematical method by which such decisions may be made. In the final analysis it is a judgment matter.

The plaintiff argues the Department of Roads could have selected 46th Street instead of 44th Street as the point at which controlled access would begin and the effect upon through traffic would have been minimal. While this might be true at this time, the effect will become greater as the area develops and traffic turning from the highway increases in volume. Again, it is a matter of judgment as to where controlled access should be imposed. By the nature of things it is usually a close question at the point of transition.

The trial court noted that the Department of Roads

might have made an error in judgment in granting a particular median break south of 39th Street. This did not make the refusal to grant a median break at 45th Street arbitrary and capricious.

We conclude that the evidence failed to show the denial of the request for a median break at 45th Street was arbitrary and capricious. The judgment of the District Court is, therefore, affirmed.

AFFIRMED.